CYNTHIA LOUIS    CIVIL ACTION NO. 08-1000

VS.    JUDGE DOHERTY

MICHAEL J. ASTRUE, COMMISSIONER  MAGISTRATE JUDGE METHVIN
OF SOCIAL SECURITY

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **AFFIRMED** and the case **DISMISSED**.

### Background and Commissioner's Findings

Cynthia Louis was born on March 1, 1961, and was 45 years old on the date of the

hearing before the Administrative Law Judge (ALJ), on February 14, 2007. (Tr. 443). Louis has

a 12th grade education, and had past relevant work as a general clerk, psychiatric aide, tax

preparer, insurance customer service representative, cell phone customer service representative,

and nursery school attendant. (Tr. 463).

According to the procedural history outlined by the ALJ, Louis filed applications for

disability insurance and supplemental security income benefits on May 4, 2004,[1] alleging

disability beginning February 28, 2004, due to back problems. (Tr. 131, 132). The ALJ issued a

decision on June 12, 2007, finding Louis not disabled at any time from the alleged date of onset

through the date of the decision. (Tr. 13 - 21). This appeal followed.

---

[1] Louis apparently also filed an application for benefits in Texas, where she used to live, sometime in 2004, which was denied. (Tr. 122, 115). The record also shows Louis filed a prior application for disability insurance benefits which was denied in 1995. (Tr. 128).

After finding Louis had not engaged in substantial gainful activity since February 28,

2004, the ALJ at the second step found the following severe impairments: degenerative disc

disease of the lumbar spine, obesity, angina, and hypertension. (Tr. 15). The ALJ specifically

discussed Louis's alleged depression, but found it not severe. (Tr. 15). At the third step, the ALJ

found Louis' impairments did not meet or equal in severity any of the listed impairments. The

ALJ assigned a residual functional capacity to Louis as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work. She can
> lift/carry up to 10 pounds. She can sit for 6 hours of 8 and walk/stand for 2 hours
> of 8. She cannot work at unprotected heights or climb ladders/scaffolds. She can
> occasionally stoop, crouch, crawl, squat, kneel, balance and climb stairs. (Tr. 17).

At the fourth step, with the aid of vocational expert testimony, the ALJ found Louis could

perform her past relevant work as a customer service representative. (Tr. 20). The ALJ then

found Louis not disabled. (Tr. 20). This appeal followed.

### *Assignment of Errors*

Louis raises the following errors on appeal:

I.   The ALJ's determination of Louis's severe impairments at step two was improper, as
     Louis suffers not only from degenerative disc disease, but from a lumbar herniated disc,
     and also suffers from cervical radiculopathy;

II.  The ALJ and the Appeals Council erred in failing to give proper weight to the opinion of
     Louis's treating physician, resulting in a residual functional capacity not supported by
     substantial evidence.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the

Commissioner's decision is supported by substantial evidence in the record; and (2) whether the

decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir.

2000); <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir.1992); <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Carey</u>, 230 F.3d at 136; <u>Anthony</u>, 954 F.2d at 292; <u>Carrier v. Sullivan</u>, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. <u>Carey</u>, 230 F.3d at 136; <u>Johnson v. Bowen</u> , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. <u>Johnson</u>, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

### *Discussion*

I.      Summary of Relevant Medical Evidence

The following is a summary of the medical history most relevant to Louis's assignments of error:

1/24/2004 (Tr. 193)          X-ray, Lumbar Spine, Four Views:
                             There is marked narrowing and lipping and vacuum sign at L4-5
                             and L5-S1.  The sacroiliac joints appear to be somewhat sclerotic.
                             IMPRESSION: Osteoarthritis lumbar spine.

| | |
|---|---|
| 5/24/2004 (Tr. 188) | MRI, Lumbar<br>Impression:<br>1. Marked intervertebral disk degeneration with moderate bulging and spondylosis at L4-L5 and to a milder degree at L5-S1.<br>2. Wide laminectomy at L4-L5. Posterior spondylosis lateralizes mildly to the left posteriorly. No significant mass effect on the thecal sac or nerve root sleeves is seen.<br>3. Left lateral spondylosis results in posterior displacement of the left L5 nerve root sleeve in and lateral to the left L5-S1 neural foramen. |
| 8/04/2004 (Tr. 271) | Pre and post operative diagnosis - herniated nucleus pulposus, lumber;<br>Procedure - Lumbar epidural block and steriod injection. |
| 8/18/2004 (Tr. 339) | Pre and post operative diagnosis - herniated nucleus pulposis, lumbar;<br>Procedure - Lumbar epidural block and steriod injection. |
| 8/23/2004 (Tr. 194) | Dr. Donald Gibson II<br>ASSESSMENT:<br>1. Back pain. The patient has back pain, status post surgery with degenerative disk disease. The patient has pain with bending and forward flexion of approximately 70-80 degrees. She cannot lift more than 10-20 pounds and cannot stand and walk for more than 30-45 minutes. She is able to ambulate without assistive devices and appears to avoid radicular symptoms and does not require extensive narcotics. The patient is able to stand and walk in the office setting. He upper extremity function is normal. The patient is capable of partial, light, and sedentary activity. |
| 9/1/2004 (Tr. 196) | Physical Residual Functional Capacity Assessment by Dr. Gregg<br>Occasionally lift/carry 50 pounds;<br>Frequently lift/carry 25 pounds;<br>Stand/walk for a total of about 6 hours in an 8 hour workday;<br>Sit for a total of about 6 hours in an 8 hour workday;<br>Push/pull unlimited;<br>Climb, balancing, stooping, kneeling, crouching, crawling, occasionally;<br>Manipulative, visual, communicative, environmental limitations none. |
| 9/10/2004 (Tr. 263) | Lumber epidural block and steriod injection. |

| | |
|---|---|
| 10/1/2004 (Tr. 346) | Dr. Henry J. Blum, evaluation:<br>Impression - Lumbar Spine<br>L4-5.<br>Spinal stenosis (Lumbar)<br>Plan Lumbar Spine:<br>Possible Surgery Recommendations: Lumbar decompression and Lumbar instrumentation and fusion. |
| 10/7/2004 (Tr. 345) | Dr. Frank L. Barnes<br>"Discussed lumber fusion . . .wants to try wt loss & meds" |
| 4/13/2005 (Tr. 321, 322) | X ray, lumbar spine:<br>1.  Degenerative Disc Disease with disc space narrowing at L4-L5 and L5-S1;<br>2.  No evidence of fracture;<br>3.  Post surgical changes in the left upper quadrant.<br><br>X ray of hip:<br>. . . The joint space is narrowed.  Calcific change is seen adjacent to the superior margin of the greater trochanter. |
| 4/29/2005 (Tr. 252) | Physical Residual Functional Capacity Assessment[2] -<br>Occasionally lift 20 pounds;<br>Frequently lift 10 pounds;<br>Stand and/or walk about 6 hours in an 8 hour workday;<br>Sit about 6 hours in an 8 hour workday;<br>Push and/or pull - unlimited;<br>Climbing ramp/stairs, Stooping, Kneeling, Crouching, Crawling, occasionally; Balancing, frequently;<br>Climbing ladder/rope/scaffolds, never. |
| 9/7/2005 (Tr. 297) | MRI, lumbar spine<br>Level L4-5: Disc space narrowing is seen at this level.  Post operative changes of laminectomy are suggested posteriorly.  There is left paracentral annular bulging with some degree of epidural fibrotic change felt to be present.  Some compromise of the left proximal neural foramen noted.<br>Level L5-S1: Left paracentral disc bulging.  No neural compromise identified. |

---

[2]It is unclear who performed this Physical Residual Functional Capacity Assessment, as page 8, the signature page, is missing.

| | |
|---|---|
| 1/24/2006 (Tr. 391) | MRI, cervical spine<br>Normal MRI of the cervical spine. |

11/2/2006 (Tr. 330)      Medical Source Statement by Dr. Manuel Espinel
Lift and/or carry less than 10 pounds "never";
Stand for 5 minutes; walk not over 1 block;
Stand/walk less than 2 hours in an 8 hour day;
Sit at one time for 15 minutes;
Sit less than 2 hours in an 8 hour work day;
Limited in reaching, handling, feeling, fingering;
Need to take unscheduled breaks every fifteen minutes, and need to rest for five minutes before returning to work due to numbness on both legs, more prominent on left leg; low back pain.
Will have to leave work early at least once a week;
Side effects of medication (Vistaril, Mobic, and Ultram) cause drowsiness.

3/20/2007 (Tr. 370)  -  Post-hearing evaluation by Dr. Stephen Wilson
"She has narrowing at he L4-5 and L5-S1 disc spaces. She has evidence where she had a laminectomy a these two levels. MRI show degenerative changes at the L4-5 and L5-S1 levels and arthritic changes at the facet joints in the lower lumbosacral spine area. . .This is a 46 year old patient who is grossly obese. . .This patient needs to be on a weight reduction program. She needs to try to return to the work force. I see no reason at this time why this patient cannot return to work if she can find a job where she does not have to lift more than 20 pounds or more than 5 pounds on a regular basis. She should also return to a job that requires only a minimal amount of standing or ambulation. If some type of job which is sedentary in nature, I feel like she can return to some form of occupation. She should not do any type of activities that require more than a minimal amount of bending, stooping, crawling or climbing."

3/20/2007 (Tr. 372)      Post-hearing Medical Source Statement of Ability to Do Work-Related Activities (Physical), by Dr. Stephen Wilson
Lift/Carry up to 10 pounds occasionally;
Sit for 8 hours and stand/walk for 2 hours at a time;
Sit for 8 hours and stand/walk for 2 hours in an 8 hour work day;
Reach frequently; handling, fingering, feeling, push/pull, operation of foot controls continuously;

|  | Never climb stairs, ramps, ladders or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl. |
|---|---|
| 4/18/2007 (Tr 415) | MRI, lumbar spine<br>2-3 mm left paracentral disk herniation with encroachment upon the left neural foramen, which appears larger than on the previous examination.<br>Left paracentral disk bulging of L5-S1 is unchanged. |
| 8/20/2007 (Tr. 433) | X ray, cervical spine<br>Findings: Negative |

The record shows Louis's medications included, at various times, the following:

Tramadol, Ultram, Mobic, Isosorbide, HCTZ, Nitroquick, Atenolol, Nexium, Neurontin, Paxil, Vistaril, Toradol, and Trazadone.[3]

## II.    Discussion of ALJ's Finding Regarding Severe Impairments

The medical records show Louis suffered from lower back impairments, variously labeled as a "osteoarthritis lumbar spine" (Tr. 193), "disk degeneration with moderate bulging and spondylosis" (Tr. 188), "herniated nucleus pulposus, lumbar" (Tr. 271, 339), "spinal stenosis" (Tr. 346), "degenerative disc disease with disc space narrowing" (Tr. 321, 322), ""annular bulging" and "disc bulging" (Tr. 297), and "disk herniation" (Tr. 415).

Louis argues that the ALJ erred at the second step in finding the impairment of "degenerative disc disease of the lumbar spine" instead of "lumbar herniated disc."  However, Louis does not specify how changing the name would change the limitations found by the ALJ to be caused thereby. In the final analysis, any conflicts in the medical evidence are to be resolved by the Commissioner, not by the courts. *E.g.*, Oldham v. Schweiker, 660 F.2d 1078, 1084 (C.A.Ala. 1981).  The undersigned concludes this argument is without merit.

---

[3]Tr. 282, 414, 417, 427.

Regarding the alleged failure to find cervical radiculopathy, counsel for Louis points to a medical record showing a positive Spurlings sign, and a statement indicating neck radiculopathy. (Tr. 439, 301). However, the medical records show both a normal x-ray and a normal MRI of the cervical spine, after referral for same due to her neck complaints and alleged radiculopathy cited. (Tr. 391, 433).[4]

Therefore, the undersigned finds the ALJ's failure to find Louis had a severe impairment of neck radiculopathy at the second step of the sequential analysis is supported by substantial evidence, and Louis's assignment of error is without merit.

II.    Weight Given by the ALJ to the Opinion of Claimant's Treating Physician

Louis argues the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ improperly discounted and failed to adopt her treating physician's opinions regarding her limitations.

Louis's treating physician in Louisiana, Dr. Espinel, saw her at Louisiana State University Medical Center (LSUMC) in Lafayette, Louisiana. While Louis saw whichever physician was available at LSUMC, she was examined at least one time by Dr. Espinel. (Tr. 473).[5] On November 2, 2006, Dr. Espinel completed a Medical Source Statement.[6] In that statement, he opined Louis could never lift or carry even less than 10 pounds; she could stand for 5 minutes at a time, could sit for 15 minutes at a time, and could stand, walk, and sit for less than 2 hours in

---

[4]20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 both require that medical evidence confirm disability applicants' have a medically determinable impairment that causes alleged symptoms.

[5]The testimony at the hearing reflects Louis actually saw Dr. Espinal at UMC, but the undersigned cannot locate the actual medical record reflective of the visit in the administrative record.

[6]The form completed by Dr. Espinel is not an SSA form.

an 8 hour work day. He also stated she was limited in reaching, handling, feeling and fingering. He opined she would need to take unscheduled breaks from work every fifteen minutes, to rest for five minutes before returning to work, and would have to leave work early at least once a week. He also noted her medications would cause drowsiness. (Tr. 330).

A prior assessment of Louis was made on August 23, 2004, by Dr. Donald Gibson, II, in connection with her application for benefits made in Texas. Dr. Gibson opined Louis could not lift more than 10 to 20 pounds, and could not stand or walk for more than 30 to 45 minutes. However, he stated "the patient is able to stand and walk in the office setting. Her upper extremity function is normal. The patient is capable of partial, light, and sedentary activity." (Tr. 194).

On September 1, 2004, also in connection with the Texas application, a Physical Residual Functional Capacity Assessment by medical consultant Dr. Frank H. Gregg, using treating or examining source statements, was issued. Dr. Gregg found Louis could occasionally lift or carry up to 50 pounds, and could frequently lift or carry up to 25 pounds. She could sit, stand, or walk for a total of about 6 hours in an 8 hour work day. She could occasionally climb, balance, stoop, kneel, crouch or crawl, and her ability to push and pull was unlimited. Dr. Gregg also found she had no manipulative, visual, communicative, or environmental limitations. (Tr. 196) Dr. Gregg wrote as follows:

> The alleged limitations of the claimants' symptoms are not wholly supported by the medical & other EOR.
> (Tr. 201).

After reviewing Louis's records and hearing testimony, the ALJ asked the agency to set up a consultative examination by an orthopedic specialist, and on March 20, 2007, after the

hearing, Louis was examined by Dr. Stephen M. Wilson.  In his examination, Dr. Wilson noted

the following:

> . . .She complains of pain on deep palpation in the lumbosacral area.  She has
> some minimal pain when she heel and toe walks.  She has some minimal pain in
> the back when she forward flexes at 70 degrees.
>
> Her orthopedic and neurological examination of the lower extremities reveals no
> evidence of muscle atrophy or muscle weakness.  There is not palpable muscle
> spasm.  The is no gross joint deformity.  The patellar and Achilles reflexes are
> present and equal bilaterally.  There is no subjective or objective numbness.  The
> patient has good strength on dorsiflexion of the feet and toes bilaterally.  Pulses
> are palpable and equal bilaterally.  Straight leg raining is negative bilaterally in the
> sitting position.
>
> . . .She has narrowing at the L4-5 and L5-S1 disc spaces. . . MRI shows
> degenerative changes at the L4-5 and L5-S1 levels and arthritic changes at the
> facet joints in the lower lumbosacral spine area.
>
> This a 46 year old patient who is grossly obese.  She has had surgery on her lower
> back.  She now has degenerative disc disease in the lower lumbar area. This
> patient needs to be on a weight reduction program. She needs to try to return to
> the workforce.  I see no reason at this time why this patient cannot return to work
> if she can find a job where she does not have to lift more than 20 pounds or more
> than 5 pounds on a regular basis.  She should also return to a job that requires only
> a minimal amount of standing or ambulation.  If some type of job which is
> sedentary in nature, I feel like she can return to some form of occupation.  She
> should not do any type of activities that require more than a minimal amount of
> bending, stooping, crawling or climbing.
> (Tr. 371).

In conjunction with his examination, Dr. Wilson completed a Medical Source Statement

of Ability to Do Work-Related Activities (Physical), in which he stated Louis could occasionally

lift or carry up to 10 pounds; could stand and walk for 2 hours at a time and up to two hours in an

8 hour work day; could sit for 8 hours at a time and 8 hours in an 8 hour work day.  She could

frequently reach in all directions, including overhead, and could continuously handle, finger, feel,

push and pull.  She could never climb stairs, ramps, ladders or scaffolds, or work at unprotected

heights, and could occasionally work with moving mechanical parts or operate a motor vehicle, and balance, stoop, kneel, crouch, and crawl.  (Tr. 372 - 378).

The general rule is that the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. See <u>Newton v. Apfel</u>, 209 F.3d 448, 454 (5th Cir. 2000), referencing <u>Leggett v. Chater</u>, 67 F.3d 558, 566 (5th Cir.1995); <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir.1994). Furthermore, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*.'" <u>Newton</u>, 209 F.3d at 455, citing <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (citing 20 C.F.R. § 404.1527(d)(2))(Emphasis added). The court in <u>Newton</u> further clarified that "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist,* an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."(Emphasis added).  Finally, "[e]ven though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'" Newton, 209 F.3d at 455, citing <u>Paul v. Shalala</u>, 29 F.3d 209, 211 (5th Cir. 1994). " '[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.' " <u>Id</u>.

Dr. Espinel's opinion regarding Louis's limitations was  "inconsistent with ... other substantial evidence" in the record, as it was in conflict with the findings of examining physician Dr. Wilson, and his Medical Source Statement of Ability to Do Work-Related Activities

(Physical), and at least in partial conflict with the findings of the Texas examining physician Dr. Gibson, whose description of her limitations is admittedly somewhat unclear.[7]   In any case, Dr. Gibson's opinions regarding Louis's functional capacities were not as limited as Dr. Espinal's.  Furthermore, the record contains Physical Residual Functional Capacity Assessments by two non-examining DDS physicians, neither of whom found Louis to be nearly so limited in her ability to sit, stand, and walk as Dr. Espinel, neither of whom found any impairment in her manipulative abilities – in fact, no doctor found any manipulative limitations, except for Dr. Espinel.  Thus, the ALJ was not required to give Dr. Espinel's opinion controlling weight.

Furthermore, although Dr. Espinel is Louis's treating physician for purposes of the analysis, the record does not reflect a consistent treating relationship with him, and while presumably he had access to and reviewed the entire medical record as it existed at the time of his opinion, there are no records referenced in his medical source statement.  For example, Dr. Espinel assigned limitations in reaching, handling, feeling, and fingering, but with no indication of what records he relied on to find same, and no indication he was aware of the prior negative MRI of her neck.  (Tr. 330, 391).

Thus, the undersigned finds the ALJ properly rejected the limitations assigned to Louis by her treating physician, Dr. Espinel, as they were controverted by other substantial evidence of record in the form of other examining and non-examining physician's opinions regarding same,

---

[7]Dr. Gibson did not assign any manipulative limitations to Louis, stated she should be "able to stand and walk in the office setting," and was "capable of partial, light, and sedentary activity," then expressly stated she " cannot stand and walk for more than 30-45 minutes."  (Tr. 194).

and, it is unclear exactly what clinical, laboratory, or diagnostic techniques Dr. Espinel's opinions were based on.

Finally, the undersigned finds the residual functional capacity assessment by the ALJ is supported by substantial evidence. As discussed above, the ALJ properly applied the severity standard at the second step to Louis's impairments, and properly disregarded Dr. Espinel's opinion as to the extent of Louis's limitations, but took into account Louis's exertional limitations in her assignment of a sedentary residual functional capacity only. The ALJ specifically stated in her decision the following:

> The undersigned notes claimant's representative felt the opinion of Dr. Wilson should not be given controlling weight. The undersigned is of the opinion that the claimant can perform sedentary work. However, the undersigned notes this opinion was not based solely on the opinion of Dr. Wilson but on the record as a whole.
> (Tr. 20).

While another ALJ may have assessed Louis's residual functional capacity differently, the role of the court is not to reweigh the evidence nor substitute our judgment for the ALJ hearing the evidence and making the decision. Therefore, the undersigned finds Louis's argument that the ALJ's residual functional capacity assessment was unsupported by substantial evidence of record is without merit.

### *Conclusion and Recommendation*

For all the reasons given above, the undersigned find the ALJ's decision that Louis was not disabled, as defined in the Social Security Act, from February 28, 2004, through June 12, 2007, was made by proper application of relevant legal standards, and was supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on September 2, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)